**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
VALERIE JACKSON,               )
                               )
               Plaintiff,¹     )
                               )
     v.                        )      1:20CV124
                               )
KILOLO KIJAKAZI,               )
Acting Commissioner of         )
Social Security,               )
                               )
               Defendant.²     )
```

<u>**MEMORANDUM OPINION AND RECOMMENDATION**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Valerie Jackson, brought this action pursuant to
the Social Security Act (the "Act") to obtain judicial review of a
final decision of Defendant, the Acting Commissioner of Social
Security, determining that Plaintiff's entitlement to Disability
Insurance Benefits ("DIB") ended on April 1, 2015.  (Docket Entry
2.)   Defendant has filed the certified administrative record
(Docket Entries 10, 11 (cited herein as "Tr. ___")), and both
parties have moved for judgment (Docket Entries 13, 15; <u>see also</u>
Docket Entry 14-1 (Plaintiff's Brief); Docket Entry 16 (Defendant's

---

¹ The Complaint names Plaintiff as Val**a**rie Jackson (<u>see</u> Docket Entry 2 at
1); however, Plaintiff's other filings in this matter (<u>see</u> Docket Entries 1, 13,
14, 17) as well as the administrative documents (<u>see, e.g.</u>, Tr. 1, 7) and medical
records (<u>see, e.g.</u>, Tr. 336) all spell Plaintiff's first name Val**e**rie.
Accordingly, this Recommendation will identify Plaintiff as Val**e**rie Jackson.

² President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting
Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for
Andrew M. Saul as the Defendant in this suit.  Neither the Court nor the parties
need take any further action to continue this suit by reason of the last sentence
of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Memorandum); Docket Entry 17 (Plaintiff's Reply).  For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and, upon denial of that application initially, Plaintiff requested reconsideration.[3]  On July 2, 2009, the Social Security Administration ("SSA") found Plaintiff disabled as of December 15, 2008.  (Tr. 93-94, 1433-54.)

On April 6, 2015, the SSA sent Plaintiff a Notice of Disability Cessation advising her that, as a result of a Continuing Disability Review ("CDR") which showed medical improvement in her condition, she stopped qualifying for DIB as of April 2015.  (Tr. 92, 95-98, 726-50.)  Following denials of her challenge to that determination at the reconsideration level (Tr. 845-72) and by a Disability Hearing Officer (Tr. 107-19), Plaintiff sought a hearing before an ALJ (Tr. 137-44).  Plaintiff (proceeding pro se) and a vocational expert ("VE") attended the hearing. (Tr. 42-79.)  The ALJ thereafter determined that Plaintiff's disability ended as of April 1, 2015 (Tr. 7-22), and Plaintiff requested review with the Appeals Council (Tr. 203-06).  The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-6), making the ALJ's

---

[3] The record contains neither Plaintiff's application for DIB nor documents reflecting the initial denial of her claim.

ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

    1.   The most recent favorable medical decision finding that [Plaintiff] was disabled is the decision dated July 2, 2009. This is known as the "comparison point decision" or CPD.

    2.   At the time of the CPD, [Plaintiff] had the following medically determinable impairments: myoclonic epilepsy and "other disorders of the bone and cartilage" (generally including unspecified bursitis and foot dysfunction).

    . . .

    3.   Through the date of this decision, [Plaintiff] has not engaged in substantial gainful activity.

    4.   The medical evidence establishes that, since April 1, 2015, [Plaintiff] has had the following medically determinable impairments: epilepsy; dysfunction of a major joint (bilateral feet); organic mental disorder (unspecified neurocognitive deficit); and posttraumatic stress disorder ("PTSD"). These are [Plaintiff]'s current impairments.

    . . .

    5.   Since April 1, 2015, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

    . . .

    6.   Medical improvement occurred on April 1, 2015.

    . . .

3

7.   [Plaintiff]'s medical improvement is related to the ability to work because it resulted in an increase in [Plaintiff]'s residual functional capacity.

. . .

8.   Since April 1, 2015, [Plaintiff] has continued to have a severe impairment or combination of impairments[:] . . . epilepsy, dysfunction of a major joint (bilateral feet), organic mental disorder (unspecified neurocognitive deficit) and PTSD . . . .

. . .

9.   Based on the impairments present since April 1, 2015, [Plaintiff] has had the residual functional capacity to perform light work . . ., with the following additional limitations: [Plaintiff] frequently can balance and stoop.  She occasionally can kneel, crouch, and crawl. [Plaintiff] cannot climb ramps and stairs or ladders, ropes, or scaffolds.  She cannot work around unprotected heights or moving mechanical parts. [Plaintiff] cannot operate motorized equipment as part of a job. [Plaintiff] must be able to sit for five minutes after standing for 25 minutes, or stand for five minutes after sitting for 25 minutes, but she can continue working in either position.  She cannot work in isolation (i.e., [Plaintiff] must have co-workers in the vicinity of her work station). [Plaintiff] cannot work in a fast-pace production environment.  She can perform work involving simple, routine tasks.  [Plaintiff] can have frequent interaction with supervisors and co-workers as part of a job, but no interaction with the public.

. . .

10.  Since April 1, 2015, [Plaintiff] has been unable to perform past relevant work.

. . .

14.  Since April 1, 2105, considering [Plaintiff]'s age, education, work experience, and residual functional capacity based on the impairments present since April 1, 2015, [Plaintiff] has been able to perform a significant number of jobs in the national economy.

4

. . .

15. [Plaintiff]'s disability ended on April 1, 2015, and [Plaintiff] has not become disabled again since that date.

(Tr. 12-21 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

5

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981),

and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]  "To regularize the adjudicative process, the [SSA] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id.

After a claimant qualifies for benefits under the Act, no presumption of continuing disability exists, see 42 U.S.C. § 423(f)(4); rather, the decision to award benefits remains subject to a periodic CDR, see 20 C.F.R. § 404.1589.  The SSA utilizes the prior determination granting benefits — the CPD — as a reference to evaluate whether any medical improvement has occurred relating to the claimant's ability to work.  See 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594.  To make this determination, the Commissioner employs a seven-step sequential evaluation process ("SEP"):

---

[4]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantially identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

7

1) Do the claimant's impairments meet or medically equal the severity of any listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1?

2) If not, has there been any medical improvement in the severity of the claimant's impairments?

3) If medical improvement has occurred, does such improvement relate to the claimant's ability to work?

4) If no medical improvement has occurred, does an exception apply?

5) If medical improvement relates to the claimant's ability to work, do the claimant's current impairments, singly or in combination, qualify as severe?

6) If severe impairments exist, does the claimant's residual functional capacity ("RFC") permit the performance of past relevant work?

7) If not, does the claimant have the RFC to perform other work existing in significant numbers in the national economy?

See 20 C.F.R. § 404.1594(b)(5). If the Commissioner finds conclusively that a claimant qualifies as disabled at any point in this process, review does not proceed to the next step. See id.

## B. Assignment of Error

In Plaintiff's first and only issue on review, she argues that "[t]he ALJ improperly ignored treating opinion evidence and gave significant weight to examining physician's opinions without reconciling discounted portions of those opinions." (Docket Entry 14-1 at 4 (single-spacing omitted); see also Docket Entry 17 at 1.) In particular, Plaintiff faults the ALJ for 1) failing to evaluate and weigh the opinion of Physician Assistant Barbara J. Seelig ("PA

8

Seelig") (see id. at 5-7 (citing Tr. 1121-30); see also Docket Entry 17 at 2-4), 2) "adopt[ing] the opinions of [the state agency] non-examining [consultants] without giving a reason" (Docket Entry 14-1 at 10 (citing Tr. 19-20)), and 3) "g[iving] significant weight to [the] opinions [of consultative psychological examiner J. Craig Hunt, Psy.D.], but "fail[ing] to provide any discussion or explanation for why [the ALJ's] RFC findings exceeded the limitations in [Dr. Hunt's] opinions" (id. at 11 (citing Tr. 20, 843); see also Docket Entry 17 at 4-9). According to Plaintiff, the United States Court of Appeals for the "[Fourth] Circuit clarified in a binding, published decision, that a case must be remanded if the reviewing court is 'left to guess about how the ALJ arrived at his conclusions.'" (Id. (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015)).) Plaintiff's contentions regarding the ALJ's evaluation of the opinions of the state agency consultants and Dr. Hunt have merit and warrant remand.

1.    PA Seelig's Opinions

Plaintiff first faults the ALJ for failing to discuss and weigh PA Seelig's opinions, noting that "the ALJ cannot just cite numerous references that support his conclusion and ignore numerous references that would contradict that conclusion, without providing any explanation for doing so." (Docket Entry 14-1 at 6 (quoting Craig, 76 F.3d at 590, for proposition that "ALJ must consider and analyze all 'obviously probative exhibits'"); see also Docket Entry

9

17 at 2-4.) According to Plaintiff, "[e]vidence from an examining source indicating limitations in the ability to perform work consistent with the ALJ's RFC is certainly probative and requires some consideration." (Docket Entry 14-1 at 7.) Plaintiff's contentions in this regard fall short.

On November 9, 2015, PA Seelig evaluated Plaintiff as part of a Department of Veterans Affairs ("VA") Compensation and Pension ("C&P") examination to confirm Plaintiff's bilateral ankle tendonitis diagnosis and, if necessary, determine a disability rating. (See Tr. 1122-30.) Plaintiff advised PA Seelig that her "ankle pain [wa]s aggravated by walking greater than 10 minutes or standing greater than 10-15 minutes." (Tr. 1123.) On examination, PA Seelig noted full range of motion in Plaintiff's ankles with pain on dorsiflexion and plantar flexion but without evidence of functional loss, crepitus, or edema. (See Tr. 1123-25.) PA Seelig rated Plaintiff's ankle strength at 5/5 and found no evidence of ankylosis or instability. (See Tr. 1128.) PA Seelig noted that she could not opine whether "pain, weakness, fatigability or incoordination significantly limit[ed] functional ability with repeated use over a period of time" (Tr. 1125, 1126) or about the effect of "flare-ups" (Tr. 1126) "without resort to mere speculation" (Tr. 1125, 1126, 1127). Regarding the functional impact of Plaintiff's tendonitis, PA Seelig opined as follows:

> Physical occupation [sic] involving prolonged weight bearing, such as standing or walking greater than 15-30 minutes without frequent rest periods would likely aggravating [sic] the ankle pain. There are no occupational limitations with sedentary work due to the [bilateral] ankle tendonitis.

(Tr. 1130.)

As Plaintiff has not contested (see Docket Entry 14-1 at 6-7; see also Docket Entry 17 at 3), PA Seelig did not, at the time she offered her opinion, constitute an "[a]cceptable medical source[]" under the regulations, 20 C.F.R. § 404.1513(a) (defined to include, inter alia, "[l]icensed physician[s]"), but rather an "[o]ther source[]," 20 C.F.R. § 404.1513(d)(1).[5] As an "[o]ther source[]," PA Seelig did not qualify as a treating source and lacked the qualifications to offer "medical opinions" as defined by the regulations. See Social Security Ruling 06-3p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("SSR 06-3p") (providing that "only 'acceptable medical sources' can give [the

---

[5] Applicable to claims filed on or after March 27, 2017, the Commissioner enacted substantial revisions to Section 404.1513, recodified the definition of "[a]cceptable medical source" into Section 404.1502(a), and, inter alia, included licensed physician assistants as "[a]cceptable medical source[s]." 20 C.F.R. §§ 404.1502(a), 404.1513 (2017). This Recommendation applies the versions of the applicable regulations in effect on August 12, 2015, the date Plaintiff requested review of the disability cessation determination (see Tr. 100-105). See Social Security Ruling 13-3p, Appeal of an Initial Medical Disability Cessation Determination or Decision, 2013 WL 785484, at *4 (Feb. 21, 2013) ("SSR 13-3p") ("[ALJs] use the date of the initial request for review of the disability cessation determination as the filing date for a new period of disability.").

11

SSA] medical opinions . . . [and] can be considered treating sources . . . whose medical opinions may be entitled to controlling weight").[6]

Nevertheless, the ALJ must still evaluate statements from "other sources" like PA Seelig under the factors set forth in 20 C.F.R. § 404.1527(c).  See Social Security Ruling 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions").[7]  The ALJ here did not discuss or weigh PA Seelig's above-quoted opinion in the decision (see Tr. 13-20) but, for the reasons discussed more fully below, any error by the ALJ in that regard remains harmless under the facts of this case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

---

[6] The Commissioner rescinded SSR 06-3p for claims filed on or after March 17, 2017.  See 82 Fed. Reg. 15263 (Mar. 27, 2017).

[7] The Commissioner rescinded SSR 96-5p for claims filed on or after March 27, 2017.  See 82 Fed. Reg. 15263 (Mar. 27, 2017).

12

Even if the ALJ had discussed and fully credited PA Seelig's opinion that "prolonged weight bearing, such as standing or walking greater than 15-30 minutes without frequent rest periods would likely aggravating [sic] [Plaintiff's] ankle pain" (Tr. 1130), that would not have compelled the ALJ to adopt greater (let alone work preclusive) restrictions in the RFC for two reasons. First, PA Seelig's opinion that "prolonged weight bearing . . . would <u>likely</u> <u>aggravat[e</u> Plaintiff's] ankle pain" does not amount to a definitive statement that Plaintiff's ankle impairment <u>prevents</u> her from engaging in such weight bearing. <u>See</u> <u>Ferrante v. Bowen</u>, No. 88-3907, 869 F.2d 593 (table), 1989 WL 14408, at *4 (4th Cir. Feb. 7, 1989) ("'[D]isability requires more than mere inability to work without pain.'" (quoting <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983))); <u>see also</u> <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that "pain is not disabling *per se*"); <u>Allison v. Colvin</u>, No. 5:16CV12, 2016 WL 11268487, at *4 (W.D.N.C. Aug. 30, 2016) (unpublished) ("An RFC does not identify limitations that would result in a pain-free workday."), <u>recommendation</u> <u>adopted</u>, 2017 WL 445231 (W.D.N.C. Jan. 30, 2017) (unpublished); <u>Green v. Astrue</u>, No. 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (unpublished) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), <u>recommendation</u> <u>adopted</u>, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011) (unpublished). Second, the ALJ's RFC assessment already included an allowance that

13

Plaintiff must "sit for five minutes after standing for 25 minutes" (Tr. 17), which accommodates PA Seelig's opinion that "standing or walking greater than 15-30 minutes" would aggravate Plaintiff's ankle pain (Tr. 1130).

Thus, Plaintiff cannot demonstrate that the ALJ's express discussion and weighing of PA Seelig's opinions would have changed the outcome of her claim.

## 2. State Agency Consultants' Opinions

Next, Plaintiff asserts that "the ALJ cannot adopt the opinions of [the state agency] non-examining [consultants] without giving a reason." (Docket Entry 14-1 at 10; see also Docket Entry 17 at 4-5.) More specifically, Plaintiff contends that the ALJ's finding that all of the consultants "found that [Plaintiff]'s previously disabling condition had improved (medically), and that [Plaintiff]'s current severe impairments were not so acute or chronic that they would prevent [Plaintiff] from performing a limited range of light work" (Docket Entry 14-1 at 10 (referencing Tr. 19-20)) constitutes "a general statement of consistency with the record" and "does not satisfy the ALJ's duty to 'build an accurate and logical bridge from the evidence to his conclusion'" (id. at 10-11 (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)). The Court should find merit to that argument.

Here, the ALJ analyzed and weighed all the opinion evidence of record together in one paragraph, as follows:

14

As for opinion evidence related to [Plaintiff]'s alleged physical and mental health impairments, [the ALJ] give[s] significant weight to the opinions of the two consultative examiners (Steven Landau, M.D., and J. Craig Hunt, Psy.D.) and the opinions of all the [s]tate agency disability consultants (E. Woods, M.S., M.D.; Margaret Barham, Ph.D.; Dakota Cox, M.D.; and Daniel Nelson, Psy.D.). Notably, these medical sources all found that [Plaintiff]'s previously-disabling condition had improved (medically), and that [Plaintiff]'s current severe impairments were not so acute or chronic that they would prevent [Plaintiff] from performing a limited range of light, unskilled work. However, in light of the level of ongoing treatment for mental health issues at the [VA] (based on records received at the hearing level), [the ALJ is] persuaded that [Plaintiff]'s mental health problems may be slightly greater than was assessed by Drs. Hunt and Barham -- but not so severe that [Plaintiff] would be unable to perform work within the [RFC], given [Plaintiff]'s relatively routine treatment findings and the positive mental status examinations.

(Tr. 19-20 (emphasis added) (internal parenthetical citation omitted).) The ALJ's blanket analysis of the consultants' opinions constitutes error for two reasons.

First, although the ALJ correctly stated that the state agency medical consultants found that Plaintiff's previously disabling condition had improved medically (see Tr. 19; see also Tr. 726-35, 750, 845-54), the state agency psychological consultants made no such finding (see Tr. 736-49, 855-72). Indeed, the SSA found Plaintiff disabled as of December 15, 2008, on the basis of "epilepsy (minor motor seizures)" and "other disorders bone and cartilage" (Tr. 93-94 (capitalization omitted); see also Tr. 1447 (reflecting diagnoses as "pes planus" (flat feet) and "epilepsy")), and did not assess Plaintiff as having any mental impairments (see

15

Tr. 1433-46.) Thus, the initial-level psychological consultant's finding that Plaintiff had a non-severe organic mental disorder (see Tr. 736-37) resulting in mild deficit in Plaintiff's ability to maintain concentration, persistence, or pace ("CPP") (see Tr. 746), and the reconsideration-level consultant's determination that Plaintiff suffered from severe organic and affective disorders (see Tr. 855-58) resulting in moderate limitation in Plaintiff's abilities to engage in daily activities, function socially, and maintain CPP (see Tr. 865) and limiting her to simple, routine, and repetitive tasks ("SRRTs") at a non-production pace without extensive contact with the public (see Tr. 867) do not constitute opinions that Plaintiff's "previously-disabling condition had improved (medically)" (Tr. 19 (emphasis added)).

Second, the ALJ's blanket assignment of significant weight to all of the consultants' opinions frustrates this Court's ability to meaningfully review the ALJ's decision. The initial-level medical consultant found Plaintiff remained able to perform medium work (see Tr. 729), but the reconsideration-level consultant restricted Plaintiff to light work (see Tr. 846). The ALJ ultimately adopted a light-exertion RFC (see Tr. 16), but did not explain how he reconciled the difference in the consultants' opinions (see Tr. 19-20). Similarly, as described above, the initial- and reconsideration-level psychological consultants offered significantly varying opinions regarding both the nature and

16

limiting effects of Plaintiff's mental impairments. (Compare Tr. 736-37 (non-severe organic mental disorder), 746 (mild deficit in CPP, no RFC limits)), with Tr. 855-58 (severe organic and affective disorders), 865 (moderate limits in daily activities, social functioning, and CPP), 867 (SRRTs, non-production pace, no extensive public contact).) Moreover, neither of those consultants' opinions match the ALJ's findings at step two of the SEP (see Tr. 12-15 (severe PTSD)) or the ALJ's mental RFC (see Tr. 17 (SRRTs, no fast-paced production, frequent interaction with coworkers and supervisors, no public interaction)). The ALJ's failure to offer any explanation as to how he reconciled the differences in those opinions in formulating the RFC (see Tr. 19-20) constitutes prejudicial error. See Ingram v. Berryhill, No. 1:17CV135, 2017 WL 6501927, at *5 (M.D.N.C. Dec. 19, 2017) (unpublished) (remanding case where ALJ accorded state agency psychological consultants "a blanket assessment of 'great weight,'" but "the psychological consultants' opinions conflict[ed] both with each other and with the RFC"), recommendation adopted, slip op. (M.D.N.C. Jan. 4, 2018) (Schroeder, C.J.); see also Huffman v. Colvin, No. 1:10CV537, 2013 WL 4431964, at *6 (M.D.N.C. Aug. 14, 2013) (unpublished) (Webster, M.J.) (finding ALJ committed prejudicial error by "attributing substantial weight to the opinions of all non-examining State agency experts . . . but then failed [without explanation] to incorporate those findings in [the

p]laintiff's RFC"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 10, 2013) (Osteen, Jr., C.J.).

3.  <u>Dr. Hunt's Opinions</u>

Lastly, Plaintiff faults the ALJ for "g[iving] significant weight to Dr. Hunt's opinions and specifically indicat[ing] that he found [Plaintiff]'s conditions to be 'slightly greater' than Dr. Hunt assessed" (Docket Entry 14-1 at 11 (quoting Tr. 20)), but failing to adopt Dr. Hunt's "opin[ion] that [Plaintiff] 'demonstrated moderate to marked problems with [CPP] based on her test scores'" (<u>id.</u> (quoting Tr. 843); <u>see also</u> Docket Entry 17 at 4-9). This contention establishes reversible error on the part of the ALJ, warranting remand.

Here, despite the ALJ's wholesale assignment of "significant weight" to Dr. Hunt's opinions (Tr. 19), which included his opinion that Plaintiff demonstrated moderate-to-marked problems with CPP (Tr. 843), <u>and</u> the ALJ's representation that he "[was] persuaded that [Plaintiff]'s mental health problems m[ight] be slightly <u>greater</u> than was assessed by Dr[]. Hunt" (Tr. 20 (emphasis added)), the ALJ found that Plaintiff had only <u>mild</u> limitation in CPP (<u>see</u> Tr. 15). The ALJ's decision entirely fails to explain this discrepancy (<u>see</u> Tr. 12-20) and that failure prevents the Court from meaningful judicial review of the ALJ's reasoning.

To avoid that conclusion, the Commissioner first argues that "the ALJ was not constrained to adopt Dr. Hunt's finding of

18

moderate-to-marked limitations in [CPP], despite affording the opinion, as a whole, 'significant' weight[,] . . . because even when an ALJ grants significant weight to an opinion overall, he is not required to adopt every portion of the opinion." (Docket Entry 16 at 20 (citing, inter alia, Bacnik v. Colvin, No. 1:12CV801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. July 17, 2014) (unpublished) (Eagles, J.)).)

    This argument, however, glosses over the fact that, when an ALJ does not include certain limitations in the RFC from a source given significant weight, the reviewing court must remain able to ascertain from the ALJ's decision why the ALJ omitted those limitations. See, e.g., Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) ("We have held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why . . . .'" (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013))); see also Pierce v. Commissioner of Soc. Sec., No. 1:18CV1309, 2019 WL 2330521, at *2 (N.D. Ohio May 31, 2019) (unpublished) ("The Commissioner's brief relies on the blanket statement that an ALJ does not need to adopt all limitations opined by an acceptable medical source given great weight. Although this is true as far as it goes, an ALJ must give good reasons for omitting such limitations.").

19

For example, in Bacnik, the Court found that the ALJ's decision explained why the ALJ had not adopted the social restrictions opined by the reconsideration-level state agency psychological consultant. See Bacnik, 2014 WL 3547387, at *4. In that regard, the Court noted that, "immediately after pointing out that the opinions of [the state agency psychological consultants] limited [the plaintiff] to [SRRTs], the ALJ also explicitly cited and gave great weight to the conclusion of [a consultative psychological examiner] that [the plaintiff] would not have trouble getting along with others from an anger management perspective." Id. (internal quotation marks omitted). In contrast, the ALJ's decision here lacks any explanation for the ALJ's failure to adopt Dr. Hunt's moderate-to-marked limitation in CPP. (See Tr. 12-20.)

Next, the Commissioner proffers the ALJ's "decision as a whole" as supplying the necessary explanation for the ALJ's failure to adopt (or to explain why he did not adopt) Dr. Hunt's moderate-to-marked CPP limitation. (Docket Entry 16 at 22.) In particular, the Commissioner asserts that "the ALJ explicitly documented why he found that Plaintiff had only mild limitations in [CPP]" by "review[ing] treatment notes showing that Plaintiff was able to follow complex commands, perform simple calculations, remain attentive in group settings, and answer questions appropriately," and by "not[ing] that Plaintiff could read, use a computer, follow written and spoken instructions, and . . . was taking college

20

courses." (Id. at 21 (citing Tr. 15).)  The ALJ's analysis of the above-described mental evidence may well support the ALJ's finding of mild deficit in CPP, but it does not resolve or explain the disconnect between that finding and the ALJ's assignment of significant weight to all of Dr. Hunt's opinions (let alone the ALJ's representation that Plaintiff's mental health problems qualified as "slightly greater" than assessed by Dr. Hunt (Tr. 20)).[8]

The Commissioner next contends that (A) "the ALJ fully accounted for any limitations in [CPP] in the RFC by limiting Plaintiff to only [SRRTs]; no work in a fast-pace production environment; and frequent (not constant) interaction with supervisors and co-workers, but no interaction with the public" (Docket Entry 16 at 22-23 (citing Tr. 17)), and (B) that the RFC's social interaction "limitations are . . . in fact more limiting

_____

[8] The Commissioner additionally points to two VA physicians' opinions which expressed doubt about the validity of Plaintiff's subjective reports of memory loss and poor attention and concentration.  (See Docket Entry 21-22 (citing Tr. 2308, 2343).)  Critically, however, the ALJ did not discuss those opinions, much less rely on them to explain why he did not adopt Dr. Hunt's moderate-to-marked CPP limitation (see Tr. 12-20) and thus the Commissioner's argument amounts to impermissible post-hoc rationalization of the ALJ's decision-making, see Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, Jr., C.J.) (holding that the Court's "[r]eview of the ALJ's ruling is limited [ ] by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions," and noting that "a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency[, and i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'" (quoting Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947))).

than Dr. Hunt's opinion" (id. (citing Tr. 17, 842); see also id. (citing Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020), for proposition that "a limitation [to SRRTs] can be appropriate even with moderate limitations in [CPP]")). However, the Court would have to resort to impermissible speculation to conclude that the ALJ's adoption of Dr. Hunt's moderate-to-marked (as opposed to mild) limitation in CPP would not have compelled the ALJ to adopt greater restrictions in the mental RFC.

In sum, the ALJ reversibly erred in his evaluation of the opinion evidence of record, requiring remand.[9]

### III. CONCLUSION

Plaintiff has established grounds for remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further

---

[9] The ALJ's decision includes the following paragraph prior to his evaluation of the opinion evidence:

As for the medical opinions and prior administrative medical findings, [the ALJ] do[es] not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from [Plaintiff]'s medical sources. However, [the ALJ] ha[s] considered fully the medical opinions and prior administrative medical findings in this case.

(Tr. 19.) As the Commissioner notes, that paragraph "refer[s] to the regulations [governing opinion evidence] applicable as of March 27, 2017." (Docket Entry 16 at 15 n.3 (citing 20 C.F.R. § 404.1520c(a)).) The ALJ's error in including that paragraph remains harmless, as he assigned specific weight to the opinion evidence (see Tr. 19-20); however, upon remand, the ALJ should recite the proper standards for the evaluation of opinion evidence.

22

administrative proceedings consistent with this Recommendation.  As
a result, Defendant's Motion for Judgment on the Pleadings (Docket
Entry 15) should be denied and Plaintiff's Motion for Summary
Judgment (Docket Entry 13) should be granted.

                              _____/s/ L. Patrick Auld_____
                                **L. Patrick Auld**
                        **United States Magistrate Judge**

August 30, 2021